**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| **Applicant,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 201** |
| | ) | |
| **AARON'S, INC.,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The Equal Employment Opportunity Commission (EEOC) has filed an application to enforce an administrative subpoena served on Aaron's, Inc. in the course of an investigation of a race discrimination charge by a former Aaron's employee filed under Title VII of the Civil Rights Act of 1964. Aaron's contends that the document requests in the subpoena are irrelevant to the underlying charge, overly broad, and unduly burdensome. Aaron's separately moves to strike portions of an EEOC declaration submitted in support of its application. For the following reasons, the Court enforces the subpoena with one limitation and denies the motion to strike as moot.

**Background**

Aaron's sells and rents residential and office furniture, consumer electronics products, home appliances, and accessories. It has more than 1,800 stores in North America, of which approximately 1,200 are corporate-owned and 600 are franchisee-owned. In Illinois, Aaron's has eighteen corporate-owned stores.

The Illinois store location at issue in this case was originally franchisee-owned. Aaron's does not operate franchisee-owned stores and was not involved in the store's hiring decisions prior to August 2007, when it acquired the store.  Upon acquisition, Aaron's offered conditional employment to the store's employees, subject to successful completion of a background check, a requirement for all newly hired Aaron's employees.  As part of this process, Aaron's conducted criminal background checks for certain positions, including that of product technician.

Otis Nash worked as a product technician at the store for approximately six years before Aaron's acquired it in August 2007.  The responsibilities of a product technician include delivering products to customers and installing products inside customers' homes.  When Aaron's acquired the store where Nash worked, it conditionally offered him employment, subject to successful completion of a criminal background check.  On September 11, 2007, Aaron's obtained Nash's background check, which showed that he had been convicted in 1992 of armed robbery and four counts of felony murder. Aaron's says that it decided to terminate Nash on September 12, 2007 because it did not want to send a convicted murderer into its customers' homes.

On May 1, 2008, Nash filed an EEOC charge alleging that he was terminated based on his race.  The EEOC assigned attorney Aaron DeCamp and investigator Susan Smith to investigate Nash's charge.

The EEOC served Aaron's with a subpoena on December 4, 2009.  In request three of the subpoena, the EEOC sought an electronic database identifying all persons who applied for employment at any of Aaron's Illinois stores from September 1, 2005 to the present.  For each applicant, the EEOC requested several items of information

2

including the applicant's name; race; store at which the applicant applied; position applied for; and a copy of the applicant's criminal background check. In request four, the EEOC requested copies of the franchise agreements for all franchisee-owned stores in Illinois. The subpoena requested production of the information by December 21, 2009.

On December 11, 2009, Alisa Cleek, attorney for Aaron's, served the EEOC with objections to the subpoena. The objections concerned only request four. Ultimately, the EEOC and Aaron's reached an agreement regarding request four which, as a result, is no longer at issue.

Regarding request three, on December 21, 2009, Cleek sent a letter to the EEOC stating that Aaron's did not have an electronic database of the type requested. EEOC attorney Aaron DeCamp says that in September-October 2010, he communicated with Cleek, who again advised that Aaron's did not have an electronic database with the requested information. DeCamp says he told Cleek that the EEOC would accept the information in any format. He says that Cleek said she would consult with her client but was not inclined to produce the information sought in request three. According to DeCamp, he never heard back from Cleek after this despite several attempts. Cleek says that no EEOC representative requested the information sought in request three in a format other than an electronic format.

On January 12, 2011, the EEOC commenced this enforcement action.

**Discussion**

**1.    Enforceability of the subpoena**

The EEOC has jurisdiction to investigate charges of unlawful employment practices filed with the agency.  42 U.S.C. § 2000e-8(a).  As part of its investigation, the EEOC has broad authority to issue subpoenas requiring the production of evidence.  29 C.F.R. § 1601.16(a).  A party served with a subpoena may seek its revocation or modification within five days of service.  *Id.* § 1601.16(b)(1).  If the EEOC determines that it will uphold all or part of the subpoena and the respondent does not comply, the EEOC may file suit to enforce the subpoena.  *Id.* § 1601.16(d).

The role of federal courts in subpoena enforcement proceedings is "sharply limited."  *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th. Cir. 1987) (internal quotation marks omitted).   Such proceedings "are designed to be summary in nature." *Id.*; *see also EEOC v. United Air Lines Inc.*, 287 F.3d 643, 649 (7th Cir. 2002).  "As long as the investigation is within the agency's authority, the subpoena is not too indefinite, and the information sought is reasonably relevant, the district court must enforce an administrative subpoena."  *Tempel Steel Co.*, 814 F.2d at 485.  The Court does not consider the merits of the underlying charge of discrimination.  *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984).

**a.    Timeliness of Aaron's challenge**

The EEOC contends that Aaron's forfeited its right to challenge request three of the subpoena by failing to petition the EEOC to revoke or modify that part of the subpoena within five days of its service.  Aaron's made timely objections to request four

4

but did not object to request three until about two weeks after the five-day period lapsed.

The cases the EEOC cites are distinguishable. They all involve respondents that failed to make *any* timely objections. *See EEOC v. Cuzzens of Ga., Inc.*, 608 F.2d 1062, 1064 (5th Cir. 1979); *EEOC v. Cnty. of Hennepin*, 623 F. Supp. 29, 32 (D. Minn. 1985); *EEOC v. Roadway Express, Inc.*, 569 F. Supp. 1526, 1528 (N.D. Ind. 1983). In this case, by contrast Aaron's asserted *some* timely objections. Though its initial objections did not address request three, Aaron's swiftly remedied this by submitting objections to that request shortly thereafter. There is nothing in the record to indicate that the later objections impaired the investigation in any way, as the EEOC still had Aaron's other objections under advisement at the time. In addition, Aaron's original objection to request three did not concern the terms or scope of the request but rather involved a contention that Aaron's did not have what the EEOC sought (specifically, an electronic database containing the information in question). Given these circumstances, the Court concludes that Aaron's did not forfeit the right to object to request three.

### b. Relevance

Title VII entitles the EEOC to access to any evidence that "is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a). Courts have interpreted the term "relevant" to include "virtually any material that might cast light on the allegations against the employer." *Shell Oil Co.*, 466 U.S. at 68-69.

Aaron's argues that request three amounts to a fishing expedition in that it

5

requests information that is wholly outside the factual scope of the underlying charge. In particular, Aaron's contends that the request for information regarding other employees and applicants is irrelevant because Nash alleges only an individual claim of discrimination.

Contrary to Aaron's argument, it is well established that requests of the type that the EEOC made in the subpoena are relevant to a charge of racial discrimination. "Discrimination on the basis of race is by definition class discrimination . . . and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of . . . were motivated by racial factors." *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969); *accord, United Air Lines*, 287 F.3d at 653 (quoting *Blue Bell Boots* with approval).

Nash's charge alleges that he was subjected to race discrimination when Aaron's terminated his employment on the basis of a criminal background check. In its investigation, the EEOC seeks information to determine whether Aaron's criminal background policy had a disparate impact on black applicants generally and whether Aaron's used the policy to treat black applicants differently than non-black applicants. The requested information will enable the EEOC to determine whether there were patterns of racial discrimination in Aaron's hiring practices, which in turn could give rise to an inference of racial discrimination in Nash's termination. The Court concludes that request three is relevant.

Aaron's also contends that request three is overly broad because it requests information from stores beyond the scope of the relevant decision-maker's authority.

6

The EEOC responds that the evidence indicates that Aaron's has a uniform criminal background check policy that it claims to have applied to all applicants at its Illinois facilities during the relevant time frame. Aaron's contends, however, that it is not involved in franchisee-owned stores' hiring decisions. Strickland Decl. ¶ 4.

The Supreme Court "has cautioned that the charge and relevance requirements [under Title VII] should not be interpreted so broadly as to render the statutory language a 'nullity.'" *United Air Lines*, 287 F.3d at 653 (quoting *Shell Oil Co.*, 466 U.S. at 69). Because the store at issue in Nash's charge is a corporate-owned store and because it is uncontradicted that Aaron's does not control the hiring decisions of franchisee-owned stores, the Court declines to enforce request three to the extent it seeks information from franchisee-owned stores.

Aaron's has not persuaded the Court, however, that it should impose further limitations on the scope of request three. In particular, its argument regarding the decision-maker and his or her authority is conclusory and unsupported by specific facts. *Compare EEOC v. Quantum Foods, LLC*, No. 09 C 7741, 2010 WL 1693054, at *4-5 (N.D. Ill. Apr. 26, 2010) (limiting the scope of a subpoena where those responsible for the alleged discrimination did not have responsibilities concerning other facilities operated by the employer). Furthermore, Aaron's appears to claim to have a uniform criminal background check policy that it applies to all its corporate-owned stores. For this reason, there is no basis to limit the scope of the subpoena to stores within the particular decision-maker's responsibility. The Court concludes that the EEOC is entitled to the requested information for all Illinois corporate-owned stores.

7

### c. Time frame covered by the subpoena

Aaron's contends that the temporal scope of request three is overly broad. The Court disagrees. Nash was terminated in September 2007. Request three seeks information from September 1, 2005 to the time of service of the subpoena, December 4, 2009. Thus, the EEOC seeks information from about two years before to about two years after Nash's termination. "[C]omparative information . . . is absolutely essential to a determination of discrimination." *Roadway Express, Inc.*, 261 F.3d at 642 (internal quotation marks omitted). Pre-charge and post-charge data can provide useful information to enable the EEOC to assess whether discrimination took place. *Id.* For these reasons, the Court concludes that the subpoena's time frame is reasonable.

### 2. Undue burden

A court may decline to enforce an otherwise valid subpoena if compliance would be unduly burdensome. *United Air Lines*, 287 F.3d at 653. To establish undue burden, an employer has the "difficult burden" of showing that "compliance would threaten the normal operation of business." *Id.* (internal quotation marks omitted). Aaron's argues that compliance would be unduly burdensome because it does not possess an electronic database as sought in request three or any database in a format responsive to the EEOC's request. Aaron's says that to comply with the request, it would have to search warehouses and storage facilities for responsive information. Aaron's also claims that applicant files do not include information about applicants' race or information relating to background checks.

The EEOC has agreed to accept paper copies of applications and personnel

8

background reports in lieu of an electronic database. This agreement renders moot Aaron's objections concerning format. If Aaron's does not have the requested records, "of course it would be excused *pro tanto*." *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir. 1981).

Finally, Aaron's argues that a search for physical copies would result in exorbitant expense. Strickland Decl. ¶ 9. It has failed, however, to support this contention with any evidence. To meet the high burden of establishing that compliance would threaten Aaron's normal business operations, more than conclusory allegations are required. *United Air Lines*, 287 F.3d at 653. The Court therefore rejects the claim of undue burden.

3.      **Motion to strike**

Aaron's has moved the Court to strike paragraphs 9 and 10 of the declaration of Susan Smith because they contain inadmissible hearsay. The objection is moot. With its reply, the EEOC remedied any deficiencies by submitting the declaration of Aaron DeCamp, who had the necessary personal knowledge of the underlying contentions.

### Conclusion

For the reasons set forth above, the Court denies respondent's motion to strike [# 12] and directs respondent to comply with the EEOC's subpoena as stated in this Memorandum Opinion and Order, except that respondent need not produce information from Illinois franchisee-owned stores.

_____
MATTHEW F. KENNELLY
Date:  April 11, 2011                                   United States District Judge

9